IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 13, 2015

**GENE EARL STANLEY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Sumner County**
**No. 887-2013     Dee David Gay, Judge**

---

**No. M2014-01659-CCA-R3-PC – Filed June 1, 2015**

---

The petitioner, Gene Earl Stanley, appeals from the denial of his petition for post-conviction relief from his Sumner County Criminal Court jury convictions of one count of burglary, two counts of theft of property, felony evading arrest, reckless endangerment, driving under the influence of an intoxicant, and driving on a suspended license, claiming that he was denied the effective assistance of counsel.  Because the petitioner failed to establish by clear and convincing evidence facts that would support a conclusion that he was prejudiced by his counsel's deficient performance, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Micah Ketron, Gallatin, Tennessee, for the appellant, Gene Earl Stanley.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; L. Ray Whitley, District Attorney General; and Lyle Anthony James, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On June 29, 2011, a Sumner County Criminal Court jury returned verdicts of guilty of one count of burglary, two counts of theft of property, one count of felony evading arrest, one count of reckless endangerment, one count of driving under the influence of an intoxicant, and one count of driving on a suspended license, and on August 12, 2011, the trial court imposed a total effective sentence of 48 years' incarceration as a career offender.  The petitioner's convictions relate to the "burglary of Vic Jenkins Automotive, during which items, including a Camaro Z28, were stolen and

after which the [petitioner] engaged in a high speed chase from the police" in the stolen Camaro. *State v. Gene Earl Stanley*, No. M2012-00664-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Nashville, Jan. 14, 2013), *perm. app. denied* (Tenn. June 19, 2013). The proof adduced at the petitioner's trial established that someone stole a red Camaro Z28 from Vic Jenkins Automotive on August 20, 2010, and that nine days later, a Gallatin Police Department officer spotted the petitioner driving a vehicle matching that description away from the repair shop at a high rate of speed. *See id.* A high-speed chase, during which the petitioner "reached speeds in excess of 110 miles per hour," followed. The petitioner refused to stop the vehicle, even after stop sticks punctured the vehicle's tires, but he eventually ran off of the roadway and attempted to flee on foot. *See id.*, slip op. at 3. A seat belt wrapped around his leg prevented the petitioner's running away, but he nevertheless refused to comply with the officers' commands and had to be brought to heel with a taser device. The petitioner smelled of alcohol, and officers discovered a set of stolen tires and wheels in the backseat of the Camaro. *See id.*

When interviewed by the police following his arrest, the petitioner feigned a loss of memory of the entire incident, which loss of memory he attributed to his having consumed "two twenty-four ounce beers and a half-pint of vodka" in addition to "some whiskey" and a small amount of marijuana. At trial, however, the defendant claimed that after an evening of heavy drinking, he met a man and a woman sitting on the hood of the aforementioned Camaro in the parking lot of a local bar. He said that the couple invited him to "'party'" with them and that the man asked him to drive the Camaro because "the woman was 'kind of messed up pretty good.'" He claimed that the man rode with him as a passenger and that, when the petitioner noticed the blue lights behind him, the man "smacked him in the face with a pistol and told him to drive." *Id.*, slip op. at 5. The petitioner "insisted that there was a man in the front passenger seat when he crashed." *Id.*

On direct appeal, the petitioner conceded that he drove the stolen Camaro while under the influence of alcohol and while his driver's license was suspended but presented a claim that the State failed to disclose evidence that would have been exculpatory with regard to the charge of burglary. *See id.*, slip op. at 6. This court concluded that the petitioner waived that claim, the only claim for relief presented on direct appeal, by failing to file a timely motion for new trial, *see id.*, slip op. at 7, and that review of the issue for plain error was not necessary given that the evidence challenged by the petitioner "was not material because there is not a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," *see id.*, slip op. at 10.

The petitioner filed a timely petition for post-conviction relief on November 15, 2013, alleging that he had been deprived of the effective assistance of counsel and that the prosecution failed to disclose exculpatory evidence.

At the July 25, 2014 evidentiary hearing, the petitioner claimed that his trial counsel "never believed [his] being innocent of this case" and that, as a result, counsel failed to conduct an appropriate investigation prior to trial. He claimed that the State submitted a plea offer prior to trial that included a sentence of 12 years in exchange for the petitioner's plea of guilty and that he did not accept the offer only because his counsel "said that the video that he got showed that there was somebody else in the car and that [the petitioner] would be leaving" the courtroom that day. He said that he repeatedly asked trial counsel to inquire about "shoe prints" taken by the police from Vic Jenkins Automotive, but counsel did not do so.

The petitioner asserted that trial counsel should have moved for the recusal of the trial judge after the judge revealed that he knew a witness in the case.

The petitioner said that, following his conviction, trial counsel wrote to the petitioner and informed him that "he was coming off of [the petitioner's] case" but would represent the petitioner at the sentencing hearing.

During cross-examination, the petitioner insisted that he believed that the 12-year plea offer was still available on the day of his trial. The petitioner acknowledged that he admitted at trial that he was guilty of all the offenses save the burglary offense but claimed that the way the prosecutor "played it out . . . kind of seemed like a trick." He then claimed, for the first time, that his trial counsel did not tell him that he had a constitutional right not to testify at trial. The petitioner conceded that he remembered "something in the fashion of" a *Momon* hearing, wherein he was advised by the trial court of his right not to take the stand but insisted that his trial counsel "didn't tell [him] that [he] had the right to plead the Fifth Amendment." When pressed by the post-conviction court, however, the petitioner claimed a lack of memory. The petitioner maintained that the officer who testified at trial that he had seen the petitioner pull out of Vic Jenkins Automotive in the stolen Camaro was lying.

Upon questioning by the post-conviction court, the petitioner testified that his trial counsel performed deficiently by failing to interview the couple he met at Hank's Bar but admitted that he did not know either individual's name and had no address or telephone number for them. He also claimed that his counsel should have obtained phone records from the hospital to document a conversation between two police officers regarding the petitioner's hairstyle and the shoes he was wearing when he was arrested. He also claimed that counsel performed deficiently by telling him that a video recording showed that someone was in the car with the petitioner, which apparently led him to reject a plea offer that other proof showed had been withdrawn, but he admitted that the

recording did appear to show that there was another person in the car. The petitioner conceded that trial counsel argued to the jury that another person was in the car.

The petitioner insisted, despite vigorous questioning by the court that pointed out that his claim was utter nonsense, that his "intention when [he] came into court, . . . was to fire [trial counsel] and accept the 12-year plea." The defendant acknowledged that he had attempted to "fire" his appointed counsel prior to trial and that the trial court had refused to remove counsel from his case.

Trial counsel testified that he recalled the trial judge's alerting the parties that he had "a relationship in some respect" with one of the State's witnesses and asking the parties if they objected to his remaining on the case. Counsel said that he did not object to the trial judge's presiding over the petitioner's case. Counsel acknowledged that the petitioner was sentenced on August 12, 2011, and that he filed a motion for an extension of time to file a motion for new trial in the petitioner's case on September 20, 2011. He said that he thought he had filed a motion for new trial before being permitted to withdraw from the petitioner's case.

Counsel testified that he did not tell the petitioner that the 12-year offer had been withdrawn, explaining, "It was not necessary. He insisted on going to trial. I begged him to take the 12 years. I begged him to take the 12 years." He said that he viewed the police cruiser video prior to trial and also pulled a still-frame shot from the video, but he conceded that he did not show either to the petitioner prior to his trial. Although he could not recall their exact conversation, counsel testified that he probably told him that he had "found something that . . . might help him," but he insisted, "[A]t no time did I tell him that he was going to walk today. I would never tell that to a client. And I would never tell a client that I believe he's guilty." Counsel said that he discussed with the petitioner his right to refuse to testify and warned him that "it was dangerous to" take the stand.

During cross-examination by the State, counsel testified that the witness with whom the trial judge had some sort of relationship testified only to the value of the stolen Camaro. Counsel said that he did not ask the judge to recuse himself because he did not believe that the relationship between the judge and the witness would prejudice the petitioner and because he did not believe that the judge would have recused himself.

Counsel admitted that he did not file a timely motion for new trial but explained that he "was waiting on the transcripts."

Counsel said that he informed the petitioner of every plea offer provided by the State, including the 12-year offer mentioned by the petitioner, and that the petitioner

-4-

"flat-out" said, "No I'm not taking this." The petitioner insisted upon going to trial and "never communicated" to counsel a desire to accept the 12-year offer.

Regarding the video recording, counsel said that he watched it "over and over and over again trying to find something that might bolster" the petitioner's "contentions" and that he "found that one frame that looked like there might be somebody in the . . . passenger seat of the Camaro."

Counsel testified that he informed the petitioner that he had a constitutional right not to testify at trial and in fact warned him against doing so. He said that the particular danger in the petitioner's taking the stand was cross-examination. He added that the petitioner had a lengthy record of felony convictions. Counsel recalled that a full *Momon* hearing took place during which both counsel and the court questioned the petitioner regarding his decision to take the stand.

Trial counsel recalled that the petitioner discussed with him "two people that he had met outside the bar across from Vic Jenkins" and that the petitioner described the couple as a "short girl" and "a medium sized guy with brown hair." Counsel said that he took these general descriptions and "called various jurisdictions and asked them if they knew of any people that fit this general description that had been involved in any burglaries." He testified that he told the petitioner that finding these people based upon such general descriptions "was a near impossible task."

Upon questioning by the court, counsel reiterated that he "begged" the petitioner "to take the 12 at 60" and that he warned the petitioner that he was unlikely to be successful at trial. Counsel said his trial stategy was based upon the petitioner's claim that he met an unnamed couple who were already in possession of the stolen Camaro and that the man forced him at gunpoint to run from the police. He admitted that he did not "believe it would be successful" but stated that the petitioner "was insistent."

Counsel said that he asked to withdraw from the petitioner's case because the petitioner had expressed displeasure with his representation. He added that, "had the [petitioner] been even slightly amenable to legal advice from counsel in any way, shape, or form, this matter would not have gone to trial." He explained, "[W]hen a client refuses to take your advice, then somebody else should come in and try to do a little better job of convincing him of the proper thing to do."

At the conclusion of the hearing, the post-conviction court found trial counsel's testimony to be credible and found the petitioner's testimony not credible. The court "explicitly reject[ed] the testimony of the [petitioner] stating that he was going to take 12 years. That is not true. [He] wanted to go to trial and he got his trial." The post-

-5-

conviction judge, who had also presided at the defendant's trial, stated that the witness with whom he had a connection was the daughter of a man with whom the judge had gone on a mission trip. He said that he had no relationship, social or otherwise, with either the witness or her family. The court observed that counsel had late-filed the motion for new trial but noted that of the three issues presented, only the *Brady* issue was an issue the remedy for which is a new trial. That issue, the court observed, was addressed by this court on direct appeal. The court concluded that trial counsel performed deficiently by failing to timely file the motion for new trial but determined that the petitioner was not prejudiced by the deficient performance. Consequently, the court denied the petition for post-conviction relief.

In this timely appeal, the petitioner reiterates his claim of ineffective assistance of counsel, arguing that trial counsel performed deficiently by failing to seek recusal of the trial judge and by failing to timely file a motion for new trial and that counsel's deficient performance prejudiced him at trial and on appeal. The State concedes that counsel's failure to timely file a motion for new trial amounted to deficient performance but contends that the petitioner was not prejudiced by counsel's failure. The State asserts that counsel's decision not to seek recusal of the trial judge was not deficient performance.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and fact. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the trial court's factual findings, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

The petitioner first asserts that his counsel performed deficiently by failing to ask the trial judge to recuse himself after the judge indicated that he knew one of the State's witnesses. The proof adduced at the evidentiary hearing established that when the rightful owner of the stolen Camaro Z28 was called to testify regarding her ownership of the car and the vehicle's value, the trial judge informed the parties that the owner's family attended church with the judge and that the judge had gone on a mission trip with the witness's father. The petitioner failed to make any showing that the judge's connection to the witness prevented him from acting impartially in the petitioner's case. Indeed, the petitioner fails to even allege that the trial judge was not impartial and only argues that counsel should have raised the issue.

The petitioner also claims that trial counsel performed deficiently by failing to timely file his motion for new trial and that this failure prejudiced him on appeal. To be sure, counsel's failure to timely file the motion for new trial in the petitioner's case was outside "the range of competence demanded of attorneys in criminal cases." *See Baxter*, 523 S.W.2d at 936. As an attorney with several years' experience in the practice of law, trial counsel should have been aware that a motion for new trial must "be in writing or, if made orally in open court, be reduced to writing, within thirty days of the

date the order of sentence is entered," *see* Tenn. R. Crim. P. 33(b), and that "the time for the filing cannot be extended," *State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997) (citing Tenn. R. Crim. P. 45(b)).

That being said, the petitioner failed to establish that counsel's deficient performance "actually had an adverse effect on" his case. Although this court deemed the petitioner's claim that the State had withheld exculpatory evidence waived for counsel's failure to file a timely motion for new trial, *see Gene Earl Stanley*, slip op. at 7, we nevertheless considered the merits of the claim for plain error, *see id.*, slip op. at 8-10. We concluded "that the [challenged] evidence [was] not material because there [was] not a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.*, slip op. at 10. The petitioner presented no evidence at the evidentiary hearing that would prompt us to depart from our earlier conclusion. In consequence, the petitioner has failed to establish that counsel's deficient performance vis-à-vis his failure to timely file a motion for new trial resulted in any prejudice.

Accordingly, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE